**UNITED STATES of America, Appellee,**

v.

**Osvaldo RODRIGUEZ–CARDONA,
a/k/a "Valdo" Defendant,
Appellant.**

Nos. 89–1611, 89–1613.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1990.

Decided Jan. 23, 1991.

R. Marc Kantrowitz, with whom Kevin Connelly, Boston, Mass. and Guillermo J. Godreau, Salinas, P.R., were on brief, for defendant, appellant.

Thomas M. Gannon, Attorney, Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., with whom Daniel F. López–Romo, U.S. Atty. and Salixto Medina–Malavé, Asst. U.S. Atty., Hato Rey, P.R., were on brief, for appellee.

Before CAMPBELL, TORRUELLA and CYR, Circuit Judges.

TORRUELLA, Circuit Judge.

Appellant Osvaldo Rodríguez–Cardona brings an appeal from two separate criminal proceedings. Following a jury trial, Rodríguez was convicted of four counts of possessing cocaine with intent to distribute it, and four counts of distributing cocaine. He appeals several aspects of that conviction: (1) evidentiary rulings dealing with evidence of other wrongdoing; (2) prosecutorial misconduct during closing argument; (3) the sentence imposed by the district court; (4) denial of his motion for change of venue due to pre-trial publicity; (5) double jeopardy violation from the separate charges of possession with intent to distribute and distribution; (6) ineffective assistance of counsel; and (7) jury instructions on reasonable doubt. Separately, Rodríguez pled guilty to one count of conspiracy to possess with intent to distribute cocaine. He appeals the sentence imposed by the district court on that count. We affirm both convictions and sentences.

## I. BACKGROUND

The jury trial arose from an FBI probe of several unsolved murders allegedly involving a gang known as the Martínez–Torres brothers. During the investigation, agents recruited an informant by the name of Angel Santiago–Rodríguez. Santiago agreed to buy narcotics from the appellant under the supervision of the agents and to wear a body recorder during these transactions.

Pursuant to this plan, cocaine transactions were arranged and carried out. Before each buy, FBI agents provided Santiago with cash, wired him with a recorder, and established surveillance. Santiago then met with appellant, at appellant's restaurant or at his house nearby, and purchased varying amounts of cocaine. After each buy, the agents retrieved the tape recordings and the purchased cocaine. Both before and after each meeting the agents searched Santiago, his vehicle, and his companions to ensure that he had no narcotics in his possession other than those purchased from appellant. After four such transactions, FBI agents arrested appellant and executed a search at his house pursuant to a warrant. The search uncovered a triple beam scale and plastic sandwich bags, items frequently used by drug traffickers. Subsequent chemical analysis identified a residue on the scale as cocaine.

At trial, the government introduced the actual tape recordings made of each of the four transactions. The jury also heard testimony from the informant, FBI agents, an FBI fingerprint specialist and a DEA chemist. The defense introduced the testimony of several employees and suppliers of appellant's restaurant business.

Appellant's guilty plea stemmed from a seven-count indictment against appellant and several co-defendants for possession and conspiracy. Upon the entry of appellant's plea of guilty to the conspiracy count, counts two through seven were dismissed.

## II. DISCUSSION

### A. The Jury Trial

#### 1. The evidentiary rulings

Appellant contends that throughout the trial the judge allowed the jury to hear evidence of other crimes, wrongs or acts that should have been excluded under Rule 404(b), Fed.R.Evid.[1] This court uses a two-part test to analyze Rule 404(b) evidence. *United States v. Oppon*, 863 F.2d 141, 146 (1st Cir.1988). First, the trial judge must determine whether the evidence has any "special" probative value; that is, whether it was offered for any purpose other than solely to prove that the appellant had a propensity to commit the crime in question. *Id.* Second, the judge must decide whether the probative value of the evidence out-

---

1. Rule 404(b) provides:
 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 Fed.R.Evid. 404(b).

weighs the danger of unfair prejudice. *Id.;* *see also* Fed.R.Evid. 403.

We shall address each piece of evidence separately, and then consider the cumulative effect of the evidence. Following are the specific pieces of testimony to which the appellant objects:

■ (a) An FBI agent testifying for the government stated that the informant, Santiago, had come to the attention of the FBI during the investigation of several murders in which the Martínez–Torres brothers were thought to be involved, and that Santiago had given detailed statements admitting his own participation in the murders. Defense counsel objected; the court overruled the objection but immediately gave the following caution to the jury: "Let me instruct the jury that in this case the defendant is being tried only on charges set forth in the indictment and nothing else."

■ Initially, we express our concern that this sort of "context" evidence could easily be misused by placing a defendant in the midst of extensive criminal activity unrelated to the offense charged. Notwithstanding this potential for abuse, however, we find that in this case the evidence plainly served a purpose other than solely to demonstrate appellant's criminal propensity. The prosecution needed to get the damaging evidence about the informant in front of the jury on direct rather than on cross-examination.

> [T]he Government on direct examination may bring out information damaging to its witnesses' credibility, including evidence of their criminal records, provided the jury is cautioned that the testimony is not evidence of the defendant's guilt ... This is to prevent the defense from creating a misleading impression, or the jurors from thinking, that the Government is keeping something from the jury.

*United States v. Del Purgatorio,* 411 F.2d 84, 87 (2d Cir.1969) (citations omitted). Moreover, the testimony did not implicate appellant in the murders and was only tangentially related to appellant. In any event, the judge gave a cautionary instruction. Both facts mitigate any possible prejudice from the testimony. Under these circumstances, admission of the testimony was not error.

■ (b) Santiago and two FBI agents testified about two meetings with appellant that occurred some four months after the last of the four transactions for which the indictment issued. At both of these encounters Santiago had attempted to purchase more cocaine from appellant, but the transactions were never concluded. Defense counsel objected to the evidence on the ground that it was outside the time frame of the indictment. The judge admitted the evidence as probative of pattern, mode of operation, lack of surprise and mistake, and intent, and found that its prejudicial effect did not outweigh that probative value. The court also gave the following limiting instruction to the jury:

> I am admitting this evidence about the attempt to purchase on July 8th, 1988, not to show that, not for the defendant's character or to show that the defendant because this was an attempted sale—not that the defendant did commit the acts charged in the indictment. Only for the purpose to show intent. To show modus operandi. That's the reason why I'm admitting this evidence. The fact that this was done doesn't mean that the defendant in this case acted the way that he acted in that one. That's not the purpose I'm admitting it. Just only to show intent, modus operandi and lack of mistake.

The district court proceeded correctly in applying the *Oppon* analysis, yet we cannot agree with the conclusion it reached. There is no suggestion in the trial transcript that appellant had raised mistake as a defense, nor was modus operandi an issue. The government argues in its brief that the evidence of subsequent meetings proved that appellant had a "continuing intent to possess cocaine for distribution." We do not see the need for the government to prove "continuing intent." Surely it is sufficient to prove that a defendant had the necessary intent at the time of the offense. Other act evidence, of course, is admissible "when it is probative of an issue other than character even when the defense is a gen-

eral denial of the charge." *Oppon,* 863 F.2d at 146. Nevertheless, the probative value of the evidence is strengthened if the issue on which it is offered is specifically disputed. It appears to us that the primary, if not the only, purpose of this evidence was to show propensity. *See id.* at 147 (other act evidence should be excluded when the character inferences that may be drawn outweigh the probative value of the evidence); *see also id.* at 149 (Coffin, J., concurring) (care must be used when admitting Rule 404(b) evidence on the issue of intent to ensure that the exception does not swallow the rule).

Despite our concern, we find that the error in admitting this evidence was harmless. The evidence against appellant was overwhelming. His voice was heard on the tape recordings of four cocaine transactions, and the supporting evidence was substantial. For this reason alone we decline to reverse the conviction on this ground.

(c) A tape recording of a conversation between Santiago and appellant was introduced in which references were made to "false money," "bolita," (numbers racketeering), and possibly "Valium." [2] The court gave the following instruction:

> In that tape recording there was mention of some numbers racketeering, "bolita," and also some mention about some counterfeiting, money. Please bear in mind that the defendant is only being tried in this case with [sic] the counts in the indictment and nothing else. And that's the only counts that defendant is being tried on. And then you should disregard the recordings concerning the "bolita" and the counterfeit money in your consideration of this case.

Along similar lines, one of the FBI agents testified that appellant had served illegal sea turtle in his restaurant. The judge also followed this testimony with a cautionary instruction.

These references, although made during the transactions for which appellant was being tried, were not relevant to the issues being tried. Nevertheless, there was no genuine risk that the jury would be moved to irrational behavior by testimony about "bolita," false money, and illegal sea turtle. Moreover, any such risk was cured by the cautionary instruction.

(d) During Santiago's testimony, he testified that he had gone to see the appellant and that they had discussed the purchase of a rock of cocaine. When the prosecutor asked: "And then what happened thereafter, sir?," defense counsel objected, and the district court overruled the objection. Santiago then testified:

> We went there because we had the intention of recording what he said. Some comments of the District Attorney from Guayama that they had planned to kill.

The district court immediately admonished the jury:

> Again, ladies and gentlemen of the jury, I'm leaving in this evidence only for the purpose of why he went there as to the answer just elicited. Consider it why he went there and not the contents of the answer. So you must disregard that. You are to disregard that.

Later in the day, while Santiago was still on the stand, the district court summoned counsel and told them that he planned to instruct the jury to disregard entirely the remarks about the district attorney of Guayama. The court then delivered the following instruction to the jury:

> This morning there was an area in the testimony of the witness where he was asked why did he go to see the defendant with a recording machine. And he said that he went there and it was for the purpose of getting some evidence of apparent threats to a commonwealth district attorney. And at some point I think I gave a ruling to you that the defendant is not charged with anything else. That you should not consider that. But I'm not certain whether I was emphatic and definite in what I said, so I want to make sure that *you* understand *my* instructions.

---

**2.** The government contends that the reference to "Valium" was a mistake in the trial transcript, and that the testimony probably actually referred to "bolita." Given the statement of the trial judge, it appears that this contention is correct.

First, the defendant is on trial solely and exclusively and explicitly on the charges set forth in the indictment and nothing else. So therefore, I instruct you, ladies and gentlemen of the jury, that you should disregard, get out of your minds completely that testimony about that threat to a commonwealth district attorney. It has nothing to do with this case. It is irrelevant and therefore you should not consider it at all for any purpose whatsoever in your deliberations in this case.

Do you have any doubts? Are you willing to comply with my instructions? That's the oath you took. Very well.

The sheer force of the judge's instructions illustrates the undeniable prejudicial impact of Santiago's statement. Although we acknowledge that a witness on the stand may at times blurt out unanticipated testimony, it is to be hoped that the government endeavors to prevent, rather than encourage, these situations. It is impossible from the record to determine whether Santiago's statement emerged despite, or because of, coaching by the prosecutor.

We nevertheless decline to hold that reversible error occurred. Again, given the overwhelming evidence against appellant, and hold that if there was any error, it was harmless under the circumstances.

An evaluation of each individual piece of similar act evidence, such as we have set forth above, does not take into account the cumulative effect that such evidence may have on a jury. For that reason we spend a moment here to consider whether appellant was prejudiced by the overall flavor of criminality that the contested evidence may have lent the trial. Bluntly, we feel that the government came very close to upsetting the conviction for which it fought so hard. The evidence of other crimes or wrongdoing added very little of substance to the prosecution. The other acts were remote in time, unrelated to the charged offenses, or the acts of other persons entirely. The evidence was certainly unnecessary in light of the strength of the admissible evidence against the appellant. It is only the overwhelming nature of that evidence that prevents us from reversing the conviction.

The district court acted with a high degree of awareness of the delicate nature of the similar act evidence. During the jury charge the district court gave a thorough instruction which included this statement on similar act evidence: "You may consider such evidence not to prove that the appellant did the acts charged here, but only to prove the appellant's state of mind; that is, that the defendant acted with the necessary intent and not through accident or mistake." Throughout the trial, the court made a conscientious effort to control any damage flowing from potentially unfairly prejudicial testimony. Our point here, however, is that the trial judge should not have to make so many curative instructions. Rule 404(b) is a rule of exclusion; the government here attempted to render the rule a minor exception. *See United States v. Rubio–Estrada*, 857 F.2d 845, 851–56 (1988) (Torruella, J., dissenting). This practice is inconsistent with the fair administration of justice. We notice that this is a recurrent problem, particularly in criminal appeals from the District of Puerto Rico, where the government's representation unnecessarily continues to push Rule 404(b) to its outer limits. We have issued fair warning on this subject, and future conduct of this nature may imperil otherwise valid convictions.

## 2. *The closing argument*

■ In a claim related to the evidentiary rulings, appellant contends that the prosecutor's references in his closing argument to evidence of other crimes and wrongdoing amounted to improper use of that evidence as proof of character. The prosecutor mentioned the various criminal activities of the Martínez–Torres brothers, and made reference to "brutal" drug killings, to the "deadly trade of narcotics trafficking," and to appellant's "greediness" and "evilness." He further referred to the informant as a "murderer," and described appellant's restaurant as being a legitimate business in appearance only, because of the narcotics trade being conducted within.

Some of these remarks occurred during the prosecutor's initial closing statement and during his rebuttal.

■ Because defense counsel did not object to the prosecutor's closing argument, appellate review is foreclosed except for plain error. To constitute plain error, the misconduct must "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Glantz*, 810 F.2d 316, 324 (1st Cir.), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987) (quoting *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). The prosecutor's argument is to be viewed "not in sterile isolation, but within the framework and context of the actual trial." *United States v. Rodríguez–Estrada*, 877 F.2d 153, 159 (1st Cir.1989). Thus our inquiry is limited to determining whether the closing argument actually affected the outcome of the case.

To some degree, defense counsel opened the door to at least the prosecutor's rebuttal comments by, in his own closing argument, referring to Santiago as "a professional killer at the age of 24 years old," and a "person who coldly takes the stand and admits personally shooting two human beings and participating in the direct shooting of another six and indirectly in the arrangement to kill an additional seven." It was not inappropriate for the prosecutor to put this description of Santiago's character in context with the explanation of the drug war. Defense counsel also tried to explain the evidence of the scale and the plastic bags as necessary for running the restaurant, thus opening the door to the prosecutor's comments about the legitimacy of appellant's restaurant business.

There is no question but that the prosecutor's remarks might have, under other circumstances, placed the conviction at risk. However, given the strength of the case against appellant, and considering the failure of trial counsel to object and thus allow for a curative instruction, we do not find that the prosecutor's remarks affected the outcome of the trial. We therefore conclude that there was no plain error requiring reversal.

### 3. *Sentencing error*[3]

Two of the transactions (four of the counts) on which the jury convicted the appellant occurred before the effective date of the sentencing guidelines. On these pre-guideline counts the district court sentenced appellant to concurrent terms of 20 years in prison, to be followed by concurrent 5 year special parole terms. The court also imposed a fine of $25,000 on each count. Appellant does not appeal this portion of his sentence except as he claims that it, when joined together with the sentence on the other counts, amounts to cruel and unusual punishment. U.S. Const. amend. VIII. *See infra* at 1157.

The sentence as to the remaining four counts was imposed under the sentencing guidelines. The sentencing judge found that 60 grams of cocaine were involved, for a base offense level of 16. He then increased the offense level by four points, finding that appellant was a leader in the offense, and declined to take off two levels for appellant's acceptance of responsibility. He then determined appellant's criminal history category to be III. Under the total offense level, 20, with a criminal history category of III, the guideline sentencing range was 41 to 51 months with a minimum fine of $7500 and a maximum of $1 million.

The judge concluded, however, that because appellant had engaged in criminal conduct that fell outside the applicable time period for guidelines computations, his criminal history category significantly underrepresented the seriousness of his criminal history and the likelihood of his recidivism. According to the judge, appellant "has had a life of narco-trafficking and other violations." The judge further concluded that appellant's criminal behavior was significantly more serious than that of other defendants in the same criminal history category. For these reasons, the

---

**3.** We address here solely the sentence imposed following the jury trial. The sentence imposed for appellant's guilty plea is discussed *infra* at 1160–1161.

court announced its intent to depart upward in sentencing.

The court identified ten specific reasons, which it deemed were supported by "reliable information," for the upward departure. Those reasons follow. (a) Appellant had ordered the murder of an informant who had helped obtain a previous conviction under state law against appellant. (b) Appellant was implicated in the murder of a witness who was scheduled to testify against appellant at appellant's probation revocation hearing. (c) Appellant had filed a false police report stating that his Mercedes Benz automobile had been stolen when in fact he had sold it for $500 and had received an insurance payment of $36,991. (d) Appellant had planned to murder a district attorney of the Commonwealth of Puerto Rico who had instituted proceedings to revoke appellant's probation. (In support of this item the judge read from the transcript of the tapes made by informant Santiago). (e) Appellant had attempted to disrupt the legal system by inducing local politicians to assist him in his probation proceedings. (f) Appellant had used a minor, a nine or ten year old boy, as a messenger in his drug business. (g) Appellant was one of the most important drug traffickers in southern Puerto Rico, in effect a "drug lord." (h) Appellant derived significant income from drug trafficking. (i) Appellant had committed all these offenses while on probation.[4] (j) Appellant had demonstrated a cynical disregard for the law by hypocritically posing as a successful businessman, and had even gone so far as to display a "Say No to Drugs" sign outside his restaurant.

For all these reasons, and relying on *United States v. Díaz Villafañe*, 874 F.2d 43 (1st Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), the sentencing court determined that an upward departure to offense level 28 and to criminal history category VI was warranted. The court sentenced appellant to con-

current terms of 135 months on each of the four counts, to be followed by concurrent 5 year periods of supervised release, and a $25,000 fine on each count.

Appellant challenges his sentence on several grounds. First, he claims that it was based on unreliable and uncorroborated information. The Sentencing Reform Act of 1984 provides that:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661. Similarly, the sentencing guidelines state that, in imposing a sentence, "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." Guidelines § 1B1.4 (1990). The intent of Congress and the Sentencing Commission was clearly to leave wide open the information-gathering process at sentencing. The only qualifier imposed is that the information must be reliable. Guidelines § 4A1.3 (1990); *United States v. Brown,* 899 F.2d 94, 97 (1st Cir.1990).

 Factual findings at sentencing must satisfy only a preponderance of the evidence standard, *United States v. Blanco,* 888 F.2d 907, 909 (1st Cir.1989), and we review only for clear error. *United States v. Mocciola,* 891 F.2d 13, 16 (1st Cir.1989). The transcript of the sentencing proceedings shows that the judge relied on information from the appellant's own recorded statements, from the presentence report (to which the appellant objected only as to its failure to recognize his alleged acceptance of responsibility), and from the government's sentencing memorandum, which was based on official sources (the recordings played at trial, witness interviews, and statements by FBI agents, Puerto Rico po-

---

4. It was error for the court to consider the probation violation at this stage of the sentencing proceeding because that factor was taken into account in arriving at appellant's original criminal history category of III. *See* Guidelines § 4A1.1(d) (1990). In view of the force of the other reasons given by the judge in support of the departure, however, we do not find that this point had significant influence on the ultimate sentence.

lice officers, and confidential sources). The judge specifically found this information to be reliable, and that finding is not clearly erroneous.

██ Second, appellant claims that the district court erred in failing to reduce the offense level by two points for acceptance of responsibility. We have frequently stated that the determination of the appropriateness of a reduction for acceptance of responsibility is committed to the sound discretion of the trial court. *See, e.g., Blanco*, 888 F.2d at 911. We certainly see no basis for disturbing the district court's finding on the record before us.

██ Third, appellant claims that the court erroneously increased the offense level pursuant to Guideline § 3B1.1(a) on the basis of leadership in a criminal activity involving five or more persons. The record fully supports the court's increase, as the presentence report specifically identified at least four other participants in the activity led by appellant. Specifically, these four participants were three co-conspirators indicted with the appellant on a conspiracy charge to which all pled guilty, and a young boy used by appellant as a messenger. Including the appellant, the enterprise involved five or more persons as required by the guidelines.

Fourth, appellant claims that the court improperly departed upward based on criminal history, and that the extent of the departure was unwarranted. The court categorized appellant's criminal history as level VI (the highest possible) rather than level III, the result yielded by the calculations, and also increased the offense level from 20 to 28.

██ We review an upward departure in sentence under the test established in *Díaz–Villafañe*, 874 F.2d at 49. That test requires that we determine: (1) whether the circumstances alleged to exist in a particular case are, in theory, sufficiently unusual to warrant departure; (2) whether these circumstances actually existed in the particular case; and (3) whether the direction and degree of departure were rea-

sonable. *Id.* The upward departure in this case satisfies these criteria.

██ The sentencing guidelines specifically contemplate that the failure of a defendant's criminal history to reflect adequately the seriousness of his past criminal conduct or the likelihood of his recidivism is a circumstance sufficiently unusual to justify departure. Guidelines § 4A1.3. This court has found that several of the factors relied upon by the judge here—appellant's importance as a drug supplier, his use of a minor in his business, the amount of money involved in that business—are proper grounds for departure. *Díaz–Villafañe*, 874 F.2d at 50–51. *See also United States v. Gardner*, 905 F.2d 1432, 1437 (10th Cir.) (upward departure on basis of criminal history proper where defendant "closely resembled" career offender), *cert. denied,* — U.S. ——, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990); *United States v. Franklin*, 902 F.2d 501, 507–08 (7th Cir.) (upward departure proper where defendant continued to deal in cocaine while on bail), *cert. denied,* — U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990); *United States v. Anders*, 899 F.2d 570, 579 (6th Cir.) (upward departure proper where based on drug amounts and defendant's criminal history), *cert. denied,* — U.S. ——, 111 S.Ct. 532, 112 L.Ed.2d 543 (1990); *Brown*, 899 F.2d at 97 (upward departure proper where based on past criminal conduct); *United States v. Lang*, 898 F.2d 1378, 1380–81 (8th Cir.1990) (at sentencing, district court may consider unprosecuted criminal conduct); *United States v. Guarin*, 898 F.2d 1120, 1122–23 (6th Cir. 1990) (upward departure proper where defendant was more active cocaine dealer than offense level indicated).

In this case, we find that the judge made a well-supported determination that appellant's conduct was so egregious as to merit upward departure. That is, as we determined *supra* at 17, the information on which the judge based his decision to depart was appropriate and reliable. Thus the first two parts of the test are satisfied and we may move to the third.

"On the third tier, the district court's leeway is substantial." *United States v.*

*Aguilar–Peña*, 887 F.2d 347, 350 (1st Cir. 1990). The departure in the sentence here was itself substantial. Had appellant been sentenced under the applicable guideline range, the term of imprisonment would have been between 41 and 51 months, whereas upon departure appellant was sentenced to 135 months in prison, approximately three times the guideline range. In finding that a departure of even this magnitude was reasonable, we rely on the deference demanded of this court by *Diaz–Villafañe:*

> District courts are in the front lines, sentencing flesh-and-blood defendants. The dynamics of the situation may be difficult to gauge from the antiseptic nature of a sterile paper record. Therefore, appellate review must occur with full awareness of, and respect for, the trier's superior "feel" for the case. We will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure.

874 F.2d at 50.

The sentencing court took great pain in setting forth the reasons underlying its decision to depart. These reasons paint a portrait of appellant as a lifetime criminal offender, one who has shown no respect whatsoever for the law or any other social institutions. The judge's determination that appellant's guideline range did "not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism" appears well-taken and his reaction within the bounds of reason.

It is necessary to address a potential procedural problem with the departure undertaken in this case. Other circuits have held that, in elevating a criminal history category based on factors inadequately accounted for by the original offense sentencing court must proceed sequentially through the categories, considering each, until arriving at the one bearing the most resemblance to the defendant's situation. *See, e.g., United States v. Coe*, 891 F.2d 405, 412–13 (2d Cir.1989); *United States v. Anderson*, 886 F.2d 215, 216 (8th Cir.1989). *But see United States v. Harvey*, 897 F.2d 1300, 1305–06 (5th Cir.1990) (upward depar-

ture proper even though district court did not consider next higher criminal history category), *cert. denied,* —— U.S. ——, 111 S.Ct. 568, 112 L.Ed.2d 574 (1990). The guidelines themselves do not require a category-by-category evaluation; they do, however, state that the sentencing court must "use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." Guidelines § 4A1.3. The court in this case did just that by specifying that appellant was to be sentenced under an offense level of 28 with a criminal history category of VI. Although this court has not required that a sentencing court draw a parallel to a higher offense level in making an upward departure, we have approved the practice. *See United States v. Harotunian*, 920 F.2d 1040, 1042 n. 5 (1st Cir. 1990).

Moreover, the departure in this case was not based solely on appellant's past criminal conduct, but on a myriad of other aggravating circumstances. Correspondingly, the upward departure was not merely in criminal history category, but in both offense level and criminal history. Therefore the cases holding that the sentencing court must move sequentially through the categories when departing upwards on the basis of criminal history are readily distinguishable. We hold that the upward departure in this case, albeit severe, comported fully with the *Diaz–Villafañe* requirements.

Finally, appellant argues that his sentence was so grossly excessive and disproportionate as to constitute cruel and unusual punishment under the eighth amendment. U.S. Const.amend. VIII. This contention is obviously lacking in merit and needs no further discussion.

### 4. *Pretrial publicity*

The district court denied appellant's motion for a change of venue or, in the alternative, a hearing, or in the alternative, a continuance, based on prejudicial pre-trial publicity. The court found that appellant had failed to show "that the pre-trial publicity has been so pervasive, intense and inflammatory as to deprive defendant of a

fair trial by an impartial jury." The court also noted that the publicity in this case fell short of the publicity in other widely publicized cases, and that appellant had made no showing that would justify a presumption of prejudice against him.

 A motion for change of venue "is addressed to the sound discretion of the trial court and will not be reversed in the absence of an abuse of discretion." *United States v. Drougas*, 748 F.2d 8, 29 (1st Cir.1984) (quoting *United States v. Gullion*, 575 F.2d 26, 28 (1st Cir.1978)). The court may grant a change of venue if it "determines that there exists in the district 'so great a prejudice against the defendant that he cannot obtain a fair and impartial trial.'" Fed.R.Crim.P. 21(a). The test for prejudice sufficient to justify a change of venue is whether (a) the facts show that jury prejudice should be presumed, and (b) if prejudice should not be presumed, whether the jury was actually prejudiced against the defendant. *United States v. Angiulo*, 897 F.2d 1169, 1181 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). As appellant does not claim that the jury was actually prejudiced against him, nor do we see any evidence of actual prejudice, our inquiry will focus on whether the district court should have presumed prejudice.

 Prejudice may properly be presumed when either (a) inflammatory publicity about a case has so saturated a community that it is almost impossible to draw an impartial jury from that community, or (b) so many jurors admit to a disqualifying prejudice that the trial court may legitimately doubt the avowals of impartiality made by the remaining jurors. *Id.* at 1181–82. As to the first factor, the only "evidence" submitted by appellant in support of his claim was a bare allegation that the adverse publicity included "more than ten full first pages in newspapers; more than one hundred first rate news items; more than ten T.V. clippings." No proof or offer of proof was made on the issue of pre-trial publicity, as appellant concedes. The media coverage in this case fell well below that of other cases in which we have found

no presumption of prejudice. *See, e.g., Angiulo*, 897 F.2d at 1181; *United States v. Maldonado–Medina*, 761 F.2d 12, 18–19 (1st Cir.1985).

As to the second factor, during voir dire the court identified no more than 15 (and perhaps as few as 12) potential jurors who had been exposed to *any* information whatsoever about the case. There is no evidence as to how many of these veniremen were subsequently seated on the panel. Again we note that the indicia of prejudice here are weaker than those in other cases where we have denied relief. *See, e.g., Angiulo*, 897 F.2d at 1182; *United States v. Moreno–Morales*, 815 F.2d 725, 730–31 (1st Cir.), *cert. denied*, 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397 (1987).

 We also note that the jury was sequestered during the trial so that there was no possibility of contamination during the actual proceedings. Under these circumstances, the district court did not abuse its discretion in refusing to presume the existence of prejudice. Where there is no presumption of prejudice, the district court is not obliged to hold an evidentiary hearing on pre-trial publicity, *Maldonado–Medina*, 761 F.2d at 19, so the court's decision not to conduct an evidentiary hearing was also proper.

### 5. *Double jeopardy*

 Each of the four drug transactions between appellant and Santiago, the informant, led to two counts in the indictment: one for possession with intent to distribute a certain quantity of cocaine, the other for distribution of cocaine in the same specified quantity. Prior to each transaction, Santiago and appellant would discuss the rough amount of cocaine Santiago was interested in buying. When they met again to carry out the deal, appellant would produce the cocaine. On one occasion the appellant went back into his house and emerged with the cocaine. On another occasion he went to a parked car and retrieved the cocaine from its trunk. On two occasions Santiago initially went to appellant's restaurant and was directed to appellant's house, where he found appellant waiting with the cocaine.

Appellant argues that the distributions themselves were the sole evidence supporting the possession charges, and that the constitutional prohibition against double jeopardy was thereby violated. U.S. Const. amend. V; *see Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990); *United States v. Ortiz–Alarcón,* 917 F.2d 651, 652–54 (1st Cir.1990); *United States v. Tejada,* 886 F.2d 483, 489 (1st Cir.1989). Appellant claims that because there was no separate and distinct evidence for each offense, the possession counts should merge into the distribution counts.

It is true that:

In some instances, an offense of possession with intent to distribute merges into an offense of distribution. The test for determining merger hinges on the distinction between a single act and a continuing offense. When the narcotics involved in the possession and distribution offense are the same and there is no showing of any break in the continuity from the acquisition of the narcotics to their distribution, there is only one crime: distribution.

*United States v. Meredith,* 824 F.2d 1418, 1426 (4th Cir.1987), *cert. denied,* 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987) and *cert. denied sub nom. Parker v. United States,* 485 U.S. 991, 108 S.Ct. 1297, 99 L.Ed.2d 507 (1988). With respect to the narcotics offenses of possession and distribution, this court has held that the offenses merge only where the distribution itself is the sole evidence of possession, or where possession is shown to exist only at the moment of distribution. *See Tejada,* 886 F.2d at 490. We have also held that possession with intent to distribute is not necessarily a lesser included offense of the distribution crime. *Id.*

The government here presented evidence from which the jury could reasonably conclude that for each of the transactions charged appellant possessed cocaine "before the actual time of distribution." *United States v. Zabaneh,* 837 F.2d 1249, 1257 (5th Cir.1988). The evidence showing that appellant discussed the availability of cocaine with Santiago, went back to his house

to get cocaine, went to a car to get cocaine, or was waiting in his house with cocaine, is separate and distinct evidence from which the jury could infer that appellant possessed cocaine prior to the distribution offense. Therefore there is no double jeopardy violation. *See United States v. Bernal,* 884 F.2d 1518, 1522 (1st Cir.1989).

### 6. *Ineffective assistance of counsel*

■■■ Appellant claims that he was deprived of effective assistance of counsel at trial. Examples of the alleged poor performance of his trial attorney include failure to move *in limine* to exclude the evidence of other wrongdoing, failure to suggest a curative instruction, failure to object to the prosecutor's closing argument, failure to make an offer of proof on pre-trial publicity, failure to raise a defense of entrapment, and failure to move to suppress certain statements.

Appellant's claim of ineffective assistance is premature, because the district court has not had an opportunity to review the claim. "[I]t is ordinarily the rule that a claim of inadequate representation will not be determined on a direct appeal when the claim has not been raised in the district court." *United States v. Paz Uribe,* 891 F.2d 396, 398 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990) (quoting *United States v. Hoyos–Medina,* 878 F.2d 21, 22 (1st Cir.1989)). We see no exceptional circumstances demanding that we make an exception to the rule in this case.

### 7. *Reasonable doubt instruction*

■■■ The judge gave the jury the following instruction on reasonable doubt:

The government has the burden of proving [the defendant] guilty beyond a reasonable doubt, and if the government fails to do so, you must acquit.

Thus, while the government's burden of proof is a strict or a heavy burden, it is not necessary that the defendant's guilt be proved beyond all reasonable doubt. It is only required that the government's proof exclude any reasonable doubt concerning the defendant's guilt.

Now, a reasonable doubt is a real doubt based upon reason and common sense after a careful and impartial consideration of all the evidence in the case. The jury will remember that the defendant is never to be convicted on mere suspicion or conjecture.

Proof beyond a reasonable doubt therefore is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

Consequently, ladies and gentlemen of the jury, if you are convinced that the accused had been proved guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

Appellant did not object to this instruction. He now argues, however, that this instruction trivialized the standard of proof and thereby lessened the government's burden. Of course, we review an unobjected-to jury instruction only for plain error. Fed.R.Crim.P. 30, 52(b); *United States v. Campbell*, 874 F.2d 838, 841 (1st Cir.1989).

This court has frequently expressed its displeasure at reasonable doubt instructions that refer to personal decision-making as the standard. *See Campbell*, 874 F.2d at 841. We have emphasized in the past, and do so again here, that reasonable doubt does not require definition. *See id.* at 843. Nevertheless, although the instruction was of a type disfavored by this court, it did not constitute the plain error necessary for reversal under the circumstances. *Campbell* held that an instruction including the phrase, "the kind of doubt that would make a reasonable person hesitate to act," did not constitute plain error. *Id.* at 841–42. Taken as a whole, the instruction accurately placed the burden of proof.

## B. *The Guilty Plea*

After pleading guilty to one count of conspiracy to possess cocaine with intent to distribute, appellant offered no amendments to the presentence report. The sentencing court found that the net weight of the cocaine was 18 grams, resulting in a base offense level of 12. The court then added four levels for appellant's leadership in a criminal activity of five or more persons, and subtracted two levels for appellant's acceptance of responsibility. The court also found that the guidelines did not adequately take into account the seriousness of appellant's criminal history and the likelihood that he would commit additional crimes. The court therefore made an upward departure from criminal history category III to category IV. The resulting guideline range was 27–33 months imprisonment. The appellant was sentenced to 33 months, with a 5 year term of supervised release and a fine of $25,000. The term of imprisonment was to be served consecutive to the sentence imposed on the jury conviction.

Appellant complains that the addition of four levels for his leadership role and the upward departure in criminal history category were unwarranted. Given our discussion *supra* at 1154–1157, his contention merits little additional treatment at this time. Indeed, affirmance of the sentence follows *a fortiori* from our conclusions above. Nevertheless, we wish to address the disparity in the sentencing departures undertaken by each of the sentencing judges. It is at least possible that, while taken separately, each sentence could withstand appellate scrutiny, taken together they may indicate some problem with the procedures used.

One of the chief purposes of the sentencing guidelines was to ensure greater uniformity in sentencing. Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1, 4 (1988). Yet the guidelines necessarily leave much to the discretion of the sentencing judges. Of course, the reason for the emergence of differing perspectives in sentencing—and hence non-uniformity—is that each judge presides over a different proceeding.

Thus, in the cases here on appeal before us, one sentencing judge imposed a sentence following a full jury trial, replete with tape recordings of the appellant as he engaged in cocaine transactions. The trial involved eight separate felony counts. The other sentencing judge presided over a

guilty plea to only one felony count. The government made no argument whatsoever regarding the sentence on the plea, pursuant to its part of the plea agreement. Although both judges received essentially the same pre-sentence report, only the judge on the jury trial received a very damning sentencing memorandum from the government, and only he had access to the tape recordings introduced at the trial. Under the circumstances, it does not surprise us that the two judges reached different conclusions as to the appropriate sentence to impose. Whether the sentences are taken together or separately, there was no reversible error.

## III. CONCLUSION

For the reasons stated above, appellant's convictions are affirmed.

*Affirmed.*