UNITED STATES of America,

v.

Victor WRIGHT, Defendant.

No. 08–CR–433 (ENV)(VP).

United States District Court,
E.D. New York.

March 19, 2009.

that the pre-trial publicity surrounding the case compromises his right to a fair and impartial trial, b) that personnel, particularly those of the United States Marshals Service (the "marshals"), employed in this district may be biased against him and thus might seek to hinder his defense, and c) that the circumstances surrounding the prosecution of his case here may give the appearance of impropriety. The United States takes no firm position on the motion.[1]

■ Wright brings his motion under both bases outlined in Federal Rule of Criminal Procedure 21. Rule 21(a) makes transfer mandatory if the Court determines that "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R.Crim.P. 21(a). Where the defendant argues that pre-trial publicity is the source of this prejudice, the proper test is whether there is a "reasonable likelihood that prejudicial news prior to trial will prevent a fair trial." *United States v. Maldonado–Rivera,* 922 F.2d 934, 966–67 (2d Cir.1990) (quoting *Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)). Rule 21(b) allows the Court to transfer a prosecution "for the convenience of the parties and witnesses and in the interests of justice." Fed.R.Crim.P. 21(b). In ruling on a 21(b) motion, the Court is to consider a number of factors, including the location of the defendant, location of witnesses and "any other special circumstances that might bear on the desirability of transfer." *See Maldonado–Rivera,* 922 F.2d at 966. It is up to the trial court to properly weigh and balance these factors. *See id.* Significantly, under either provi-

James E. Neuman, New York, NY, for Victor Wright.

David S. Leibowitz, Assistant United States Attorney, United States Attorney's Office, Southern District of New York, New York, NY, for United States of America.

## MEMORANDUM AND ORDER

VITALIANO, District Judge.

On June 27, 2008, Victor Wright was indicted for assault on a federal officer, possession of a weapon while in prison and obstruction of justice. These charges stem from Wright's alleged attack on an Assistant United States Attorney at the time of his scheduled sentencing hearing before Judge Frederic Block of this Court. On January 16, 2009, Wright moved to transfer venue of his prosecution to the Southern District of New York, asserting essentially three grounds for the transfer: a)

---

**1.** The Office of the United States Attorney for the Eastern District of New York has recused itself. The government is represented by the United States Attorney for the Southern District of New York.

sion of Rule 21, the trial court exercises broad discretion. *Id.*

■ The first ground advanced by Wright offers not even the faintest basis for relief. The Court rejects as implausible Wright's argument concerning pre-trial publicity. It is simply illogical to conclude that any media accounts, even if they appeared in widely-circulated publications like the New York Times and New York Post, could somehow prejudice potential jurors against Wright in Brooklyn, but not a walkable few miles away across the Brooklyn Bridge in a Manhattan courtroom. Moreover, even if there is a speck of validity to any alleged disparity of the jury pools in the two districts, with the Brooklyn pool more adverse, a trial court has many tools at its disposal by which it can limit any prejudice allegedly caused by extensive media coverage. *See Sheppard,* 384 U.S. at 362–63, 86 S.Ct. 1507 (identifying curative steps a district court may take to address potentially prejudicial pre-trial publicity). Clearly, however, neither past nor prospective media coverage of this case in a media market equally shared by both districts supports transfer of venue from one to the other on that ground.

■ Second, the Court categorically rejects any suggestion that any court personnel in the Eastern District, specifically including sworn deputy marshals, have in any way prejudiced or have attempted, or would act in the future, to prejudice Wright's defense, intentionally or otherwise. Indeed, Wright has presented only bald speculation, with absolutely no evidentiary support, of any such bias or inappropriate behavior. As was acknowledged unanimously at the argument on this motion, no one has encountered anything but the highest level of professionalism and ethical conduct from the marshals and other Eastern District personnel. Simply put, the Court rejects as totally unfounded even the mere thought that the men and women responsible for the administration of justice in our courthouse would handle Wright's case differently than they would any of the other hundreds of cases which pass through the Court's doors—that is, with courtesy, efficiency, fairness and a commitment to protect the rights of all.

■ Nevertheless, due process requires more than just the impartial carriage of justice—it requires that true "justice must [also] satisfy the appearance of justice." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). It is for that reason alone that defendant's third argument is more than just troubling.

■ The Court must be mindful of the public's perception of the judicial process and is charged with ensuring that the public perceives its process to be impartial. The facts alleged here are highly unusual. A member of the Eastern District family, her name posted like any other on our courthouse directory, is the alleged victim. The assault is charged to have taken place here—in fact, in a cookie cutter copy of the very courtroom where this trial would be held. The potential witnesses, with their Eastern District roots—the sentencing judge, the courtroom deputy clerk, the court reporter, the marshals—are all familiar by name and nod to the personnel who would staff any trial of this case in this district. Whether there is any palpable presence of uneasiness accompanying such an assignment misses the point. The point is whether the criminal trial of a defendant, staffed by such personnel and literally in the victim's "home court", will appear objectively to be on an equal footing, fair and just. On this score, there is a dearth of guidance in caselaw—caselaw that dwells virtually exclusively on whether claims of substantive prejudice and unfairness warrant the transfer of venue.

The Court is aware, though, of a nearby nonfederal model that offers clear guid-

ance. The busiest trial court in the world, the Civil Court of the City of New York, has by administrative order taken the guesswork and hesitation out of the equation. The Civil Court mandates that any case involving one of its employees as a party must be automatically transferred to a county other than the one in which the employee works or resides. *See* ADVISORY NOTICE ON THE FILING OF ACTIONS BY OR AGAINST EMPLOYEES OF THE CIVIL COURT (December 7, 2005). Civil Court's rule has been followed by other courts, recognizing, for example, that a plaintiff's "frequent interaction with court personnel, including Justices, requires transfer of [plaintiff's] case to another county." *Palma v. City of New York*, 19 Misc.3d 1143(A), 2008 WL 2338234, at *2 (N.Y.Sup.Ct. June 9, 2008).

Although the rule and cases following it are not precisely on point, since the victim of a crime is not a "party" in the criminal prosecution, the principles underlying such rules or decisions, that is barring even an appearance of increased advantage owing to the party's membership in the court's "family," make sense. It is certainly conceivable that conducting Wright's trial in the same courthouse where the alleged crime occurred and surrounded by court personnel who may have known and worked with the alleged victim and/or the witnesses likely to be called to testify could cause an objective reasonable observer to second guess the impartiality and fairness of the proceedings. Indeed, any concern about appearances may be further exacerbated by the fact that the alleged victim here is entitled under the Crime Victims' Rights Act not only to appear at Wright's trial, but also to be reasonably heard at critical stages, even to the point of making recommendations which may depart from positions advanced by the prosecution. *See* 18 U.S.C. §§ 3771(a)(3)-(4). All in all, in harmony with the Civil Court rule, where a member of the court family is a party or a victim, that fact and those relat-ed to it can certainly qualify as "special circumstanc[es] that might bear on the desirability of transfer." Upon consideration of these circumstances, the Court concludes that transferring this case to the Southern District as requested by defendant is "in the interests of justice." *See Maldonado–Rivera*, 922 F.2d at 966. Therefore, and with no objection from the government, Wright's motion to transfer venue should be granted and any appearance of unfairness avoided.

The Clerk of the Court is directed to transfer this case to the Southern District of New York.

SO ORDERED.