# United States Court of Appeals
## For the First Circuit

No. 10-1864

UNITED STATES OF AMERICA,

Appellee,

v.

FRANKLIN QUILES-OLIVO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Jorge E. Rivera-Ortíz for appellant.
Brian K. Kidd, Assistant United States Attorney, with whom
Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-
Sosa, Assistant United States Attorney, Chief, Appellate Division,
and Thomas F. Klumper, Assistant United States Attorney, were on
brief for appellee.

June 29, 2012

**TORRUELLA, Circuit Judge.** Defendant-Appellant Franklin Quiles-Olivo ("Quiles") appeals his conviction for depredation of government property in violation of 18 U.S.C. § 1361 on two grounds. He contends the district court abused its discretion when it refused to grant his motion for change of venue and that it deprived him of his Sixth Amendment right to a public trial when it failed to investigate his mother's alleged exclusion from the courtroom during jury selection. Finding no such abuse of discretion or deprivation of constitutional rights on the district court's part, we affirm.

## I. Background

On January 12, 2010, Quiles visited the federal courthouse located in Hato Rey, Puerto Rico to verify the status of two civil cases he had previously filed pro se with the district court. Quiles was disgruntled with how his cases -- by then denied and dismissed -- had proceeded. Frustrated by his inability to obtain legal counsel to represent him in those cases and upset at what he believed had been violations of his civil and constitutional rights, Quiles decided to bring a new form of action before the court: himself.

Quiles wore a long-sleeved blue shirt. Hidden to the public at the time of his arrival was the white lettering he had written on the inside front-and-back of his shirt, "Desobediencia

Civil."[1]  Quiles also brought with him a motion he drafted expressing his discontent at the court's handling of his prior cases.  Quiles passed through security -- the wording still invisible to the outside world -- and proceeded to the Clerk's Office.  He filed his motion and then walked into a side room on the right side of the Clerk's Office lobby.

The side room was open to the public.  From this room, persons could check the status of cases and obtain copies of records and legal documents from a window in the back of the room. The room contained three cubicles, each equipped with a computer. One of the three computers had a scanner attached to it for attorney use only.  The other two computers were open to the public.

Quiles sat at one of the terminals; an attorney sat at another.  Two employees also were present, both standing behind the window at the back of the room.  Quiles reviewed the status of his civil cases on the court's electronic system.  He then sat in front of the computer, apparently reflecting for several minutes on how best to make known his discontent as to what he believed was an abuse of his rights, fully convinced that the motion he had filed that day was not a sufficient expression of dissatisfaction.  He paused.  His decision then made, he acted swiftly.

---

[1]  As may be discerned from the Spanish words themselves, "Desobediencia Civil" translates to "Civil Disobedience."

Quiles turned his shirt inside-out, revealing the civil disobedience words. He then struck the computer monitor and grabbed the scanner. He smashed the scanner on the ground. In its rapid trajectory to the ground, the scanner hit the computer monitor, damaging both. Quiles picked the scanner up and, again, threw it on the ground. His acts of defiance and destruction completed, Quiles lay on the ground and placed his hands behind his back. He knew his acts of protest were wrong and that consequences awaited him.[2]

One of the two court employees present hit the panic button located in the copying area. Several U.S. Marshals, court security officers, and federal agents arrived soon thereafter and arrested Quiles. The Clerk's Office subsequently replaced the scanner at a cost of $2,322.85 and substituted a spare monitor for the broken one.

The government charged Quiles with depredation of U.S. property resulting in damages exceeding $1,000.00 in violation of 18 U.S.C. § 1361. Quiles pled not guilty. The court granted bail subject to certain conditions; when Quiles failed to comply with these requirements over the following month, the court revoked bail and issued a warrant for Quiles's arrest, ordering him detained until trial. The court set a trial date of May 18, 2010.

---

[2] During cross-examination, Quiles confirmed that he knew at the time he destroyed both the computer monitor and scanner that it was wrong to do so and that he would be arrested for such acts.

Quiles then took it upon himself to file a pro se motion, written in Spanish, with the Court of Appeals moving for a change of venue. On May 12, 2010, Quiles's assigned counsel filed an emergency motion to continue the jury trial because he did not have a copy of Quiles's pro se motion, nor was he aware of its actual contents.[3] Counsel also asserted that, assuming the pro se motion had been filed, trial should be continued until the Court of Appeals had issued a decision.

On May 17, 2010, the district court denied counsel's motion for a continuance on the grounds that the pro se motion for a change of venue had not been found. The next day, however, Quiles's counsel filed an informative motion clarifying that the reason the motion could not be found in the Court of Appeals records was because it had been returned, having been filed in Spanish and not the as-required English language of the court.[4] Quiles's counsel advised the district court that a similar, properly-filed and in-compliance motion was pending before the Court of Appeals.

The case was called for trial that same day, May 18, 2010. Before the jury selection process began, the court addressed

---

[3] It is not clear from the record when Quiles's counsel was appointed or the circumstances surrounding such appointment.

[4] First Circuit Local Rule 30.0(e) provides that "[t]he court will not receive documents or cited opinions not in the English language unless translations are furnished." 1st Cir. R. 30.0(e).

several pending matters, including Quiles's oral requests for change of venue and recusal of the judge; it denied them. Two days later, following counsel's May 19 emergency motion to change venue and request for reconsideration of the court's prior denial, the court again denied Quiles's venue change demand.

The case proceeded to trial. After three days of testimony and evidence from both parties, the jury rendered a verdict, convicting Quiles of destruction of U.S. property for damages greater than $1,000.00. On June 30, 2010, the district court sentenced Quiles to time served. It also imposed a two year supervised release term, a $100 Special Monetary Assessment, and restitution in the amount of $2,328.19, representing the original purchase cost of the scanner. The court held that Quiles's monetary penalties could be paid during the term of his supervised release.

On July 1, 2010, Quiles set his voice upon this court and timely filed a notice of appeal.

## II. Discussion

### A. Change of Venue

It is a fundamental constitutional canon that criminal defendants have a right to trial by an impartial jury. U.S. Const. amend. VI; Skilling v. United States, 130 S. Ct. 2896, 2912-13 (2010). Moreover, "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

-6-

This firm requirement, however, may be flexed where a defendant's request for transfer proves warranted due to either of two factors set forth in Fed. R. Crim. P. 21: (1) the court determines that a defendant cannot receive a fair and impartial trial in the original district due to excessive prejudice, Fed. R. Crim. P. 21(a), or (2) the convenience of the parties, witnesses, victims, and the interest of justice so dictates, Fed. R. Crim. P. 21(b).  We review a district court's denial of a motion for change of venue for abuse of discretion.  United States v. Misla-Aldarondo, 478 F.3d 52, 58 (1st Cir. 2007); see also United States v. Rodríguez-Cardona, 924 F.2d 1148, 1158 (1st Cir. 1991).

Quiles contends his transfer claim is "fundamentally based" on Rule 21(b)'s "interest of justice" provision.  But he confusingly blends his Rule 21(b) arguments with references to Rule 21(a) and discussion of its prejudice prohibitions.  Giving Quiles the benefit of the doubt, we cover the waterfront and consider both provisions.  We first address whether Rule 21(a)'s specifications serve as a solution to his venue quandary.  In short: they do not.

Venue change on grounds of prejudice will be deemed appropriate where there is an ever-prevalent risk that the level of prejudice permeating the trial setting is so dense that a defendant cannot possibly receive an impartial trial.  See Skilling, 130 S. Ct. at 2913 (noting "[t]he Constitution's place-of-trial prescriptions . . . do not impede transfer of the proceeding to a

different district . . . if extraordinary local prejudice will prevent a fair trial"); United States v. Brandon, 17 F.3d 409, 441 (1st Cir. 1994) ("Change of venue is proper where the level of prejudice against a defendant precludes a fair and impartial trial because the community is saturated with inflammatory publicity about the case."). This prejudicial fog clouding a trial's fairness may be established where the facts show "that jury prejudice should be presumed, and [] if prejudice should not be presumed, [that] the jury was actually prejudiced against the defendant." Rodríguez-Cardona, 924 F.2d at 1158 (emphasis added); see also Misla-Aldarondo, 478 F.3d at 58 (distinguishing between a presumption of prejudice and actual prejudice). We address each form of prejudice in turn.

Generally, "[a] presumption of prejudice is reserved for those extreme cases where publicity is 'both extensive and sensational in nature.'" Misla-Aldarondo, 478 F.3d at 58 (quoting United States v. Angiulo, 897 F.2d 1169, 1181 (1st Cir. 1990)). Stated differently, Rule 21(a)'s requirements tend to "almost exclusively" apply "in cases in which pervasive pretrial publicity has inflamed passions in the host community past the breaking point." United States v. Walker, 665 F.3d 212, 223 (1st Cir. 2011). A review of the record here reveals no ubiquitous "pretrial publicity" or "inflamed passions" of such a nature that the

district court's denial of change of venue may be deemed an abuse of discretion. Id.

For instance, there is no indication (nor does Quiles point us to such evidence) that Quiles's altercation with the computer equipment entered the local zeitgeist to such a magnified or spectacular extent that it might have tainted the jury pool. See id.; see also United States v. Angelus, 258 F. App'x 840, 844-45 (6th Cir. 2007) (finding no abuse of discretion in district court's denial of venue change where no showing that the limited media coverage at issue created a prejudicial atmosphere towards appellant's chances for a fair trial). Far from it, the district judge, pre-jury selection, specifically noted the limited-to-no media coverage on the case, stating, "I don't expect that this case will be covered by the press. The press has not been here." Moreover, the district judge, cognizant of publicity's potential impact on a jury, instructed members against discussing the case amongst others, or reviewing newspaper articles or listening or viewing any radio or television broadcasts concerning the case.

In light of this record, we cannot say the district court's denial of Quiles's venue change motion, at least on grounds of presumptive prejudice, constituted an abuse of discretion, given that the record is devoid of any suggestion -- let alone evidence -- that if any such media coverage took place, it was inflammatory, sensational, or otherwise capable of prejudicially enshrouding

Quiles's chances of a fair trial, See Misla-Aldarondo, 478 F.3d at 58; Brandon, 17 F.3d at 441-42; United States v. McNeill, 728 F.2d 5, 9 (1st Cir. 1984).

We continue in our prejudice analysis and turn to actual prejudice. Actual prejudice hinges on "whether the jurors seated at trial demonstrated actual partiality that they were incapable of setting aside." Angiulo, 897 F.2d at 1182. A guiding beacon in this analysis is the trial judge, who is responsible for conducting the voir dire and to whom we defer from our more distant appellate position. See Brandon, 17 F.3d at 442 ("The trial court has broad discretion in conducting voir dire."); cf. United States v. López-López, 282 F.3d 1, 14 (1st Cir. 2002) (observing the trial judge's "hands-on familiarity with the nuances of the case -- nuances which may not survive transplantation into a cold appellate record") (quoting United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987)) (internal quotation marks omitted). This question-and-answer process affords the trial judge a more intimate assessment of the jurors, allowing him to "develop a contemporaneous impression of the extent and intensity of community sentiment regarding the defendant." McNeill, 728 F.2d at 9. Where the trial judge "believed that he had impanelled [sic] a jury of twelve open-minded, impartial persons," we will only "set aside his action [if] juror prejudice is manifest." Id.; see also Angiulo, 897 F.2d at 1181-82. The task here falls to the defendant to show that the

contagious seeds of partiality had taken root within the jury's mind. See Murphy v. Florida, 421 U.S. 794, 800 (1975).

The evidence does not lead us to conclude that the district court abused its discretion in denying venue change on account of actual prejudice rearing its ugly head. To the contrary, the record shows a careful investigation by the court into jury bias. When denying Quiles's motion, the district judge performed an extensive voir dire of the jury pool. Specifically, the trial judge questioned potential jurors as to their knowledge of Quiles, the government witnesses, and the case itself; no one had any such knowledge or even familiarity with those persons or the case. The judge expressly asked the pool whether any potential jurors had any connection to the district court or the federal government; those who did were dismissed. The judge additionally asked whether the fact that the government was the claimed victim in the case, or that the case concerned the issue of civil disobedience, colored anyone's ability to be impartial; all represented that it did not and that they believed themselves capable of rendering a fair verdict. Only one juror asked to be removed, and it was solely on the grounds of her age and concern with driving at night. And none of the reviewed juror responses shows, either expressly or implicitly, an admission of partiality or bias on the part of any of the impaneled members, nor does the nature of their responses or the circumstances surrounding their

answers raise any red flags as to the candor of their affirmations.[5]  See McNeill, 728 F.2d at 10.

Without so much as a whisper of animus evidence against Quiles from the record, we cannot say that the district court erred in its denial of appellant's motion for change of venue.  See id. However, Quiles has one final arrow in his quiver.  Resting upon United States v. Wright, 603 F. Supp. 2d 506 (E.D.N.Y. 2009), he asks us to view the fact that the crime for which he was charged occurred in the same courthouse in which his trial was to ensue as the prejudicial tipping point in his favor.  We have two responses.

First, the factors considered by the district judges in Wright and the underlying case are both distinguishable and support the judges' respective differing-yet-discretionary conclusions as to venue.  For instance, in Wright, the district judge reasonably

---

[5]  The court also provided several cautionary instructions to the jury throughout trial, including the following in its final charge to the jury:

> Cautionary instructions as to testimony of government employees.  The fact that a witness is employed by the Government or the U.S. Marshals does not by itself entitle such witnesses' testimony to be given more weight or credence than that of any other witness.  You are to judge the credibility of all witnesses fairly and reasonably, and you are to consider any interest whatsoever that each of them may have in the outcome of the case in determining the weight to be given to their testimony.

Such instructions further color our conclusion that the district court here acted properly and took steps to ensure that the jury was not actually biased against Quiles.

determined that change of venue was warranted because in addition to the crime occurring in the same courthouse as the trial, the victim was a court employee (specifically, a federal prosecutor attacked during a sentencing hearing, with potential witnesses being the judge, court reporter, or marshal); there was a high likelihood that all court personnel involved in the trial knew or were familiar with the victim and/or the testifying witnesses; the government recused itself from the case;[6] and the victim had the right to appear throughout the trial and be "reasonably heard." Wright, 603 F. Supp. 2d at 507, 509. Here, the district judge reasonably reached a different outcome based on distinct facts, namely, that the case solely concerned the depredation of property at the Clerk's Office; the government did not recuse itself from the case; the judge did not witness the events; and the only connection between the witnesses and court personnel to the crime was the fact that they were employees in the same courthouse in which the crime at issue transpired. We cannot say the district judge's conclusion here, both judiciously reached and based on a notably distinct record from that of Wright, constituted an abuse of discretion.

---

[6] Specifically, the Office of the United States Attorney for the Eastern District of New York -- the victim's place of prosecutorial employment -- recused itself from the case; the United States Attorney for the Southern District of New York represented the government in the underlying dispute. See Wright, 603 F. Supp. 2d at 507 n.1.

Second, in our prior decision in <u>Walker</u>, we rejected an appellant's invitation to hold that transfer was required solely because a victim of the appellant's crime was a court employee located in the same district and working in the same courthouse in which appellant was to be tried. <u>Walker</u>, 665 F.3d at 223. Extending this logic one step further, we similarly decline to hold that because an appellant's crime occurred in the same district and at the same courthouse in which his trial is to be held, an automatic presumption of unfairness is triggered, effectively foreclosing any opportunity for a fair trial. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 223; <u>Angelus</u>, 258 F. App'x at 842, 844. Left with no "demonstrable reality" of either actual or presumptive prejudice, <u>United States ex rel. Darcy</u> v. <u>Handy</u>, 351 U.S. 454, 462 (1956), we proceed to Quiles's "interest of justice" arguments under Fed. R. Crim. P. 21(b).

Generally, venue change under Rule 21(b) may be warranted depending on a number of factors, the significance of which inevitably will vary depending on the facts of a given case. <u>See</u> <u>Platt</u> v. <u>Minn. Mining & Mfg. Co.</u>, 376 U.S. 240, 243-44 (1964) (listing such factors as the location of a defendant and potential witnesses, contested events, relevant documents, and counsel; expense to the parties; overall accessibility to trial location; a given district's docket condition; potential disruption of defendant's business if case is not transferred; and any other

-14-

special factors in play); see also Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987). Quiles contends the district court abused its discretion when it refused to transfer his case under Rule 21(b)'s "interest of justice" provision. Quiles, however, offers no arguments asserting that a venue transfer would have convenienced the parties, witnesses, counsel, or the like. Given that Rule 21(b) lists both "convenience" and "interest of justice" conjunctively,[7] we pause briefly to assess whether there is any merit to a transfer claim on grounds of convenience. See Walker, 665 F.3d at 224; see also United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006).

There is not. The main witnesses to the case were located in Puerto Rico; there is no showing that Puerto Rico was not a reasonably convenient forum for the parties or their respective counsel; and, being the situs of the underlying events, any relevant evidence or documents presumably would be located in Puerto Rico.

Furthermore, Quiles has failed to establish that a fair trial was not possible for him in Puerto Rico. As previously discussed, the court's careful probing for partiality during the voir dire process and repeated cautionary instructions fall far

---

[7] Specifically, Rule 21(b) states: "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b) (emphasis added).

-15-

short of showing juror bias. As to court personnel and the judge, Quiles's argument remains, at heart, a too-close-for-comfort proposition. Specifically, he contends that all government witnesses (with the exception of a testifying local lawyer) in his case are courthouse employees who would inevitably be entitled to greater deference at trial due to their status as "members of the district court family." Moreover, all court staff, including the judge, are too connected -- by virtue of their physical job placements -- to the scene of the allegations, making transfer "in the interest of justice" warranted.

We do not agree. The district judge, when denying Quiles's motion, expressly noted that the judge "did not observe the facts that occurred at the Clerk's Office," i.e., he was not an actual witness to the underlying events at issue. The district judge further observed that he played no role in evaluating the property post-incident; had not in fact ever seen the damaged property; had not been anywhere near the premises in which the two computers were located the day of the crime; and had not requested the filing of a criminal indictment in the case. He also stated he had no knowledge the incident had even occurred until Quiles came before the court requesting appointment of new counsel.

Finally, nothing in the record shows any connection between the district judge and the government witnesses, either

-16-

inside or outside the courtroom.[8]  And nothing in the record reveals any bias or partiality on the part of the judge, court personnel, or witnesses during the trial itself.  Cf. Wright, 603 F. Supp. 2d at 508 (rejecting contention that court personnel -- some of whom would serve as trial witnesses -- employed at same courthouse in which crime transpired and trial was to occur would, by nature of their courthouse employment, treat defendant's case differently than any other case).

That will do.  Our deferential review of the record does not show that the district court erred in denying Quiles's transfer of venue request, nor has Quiles presented us with evidence suggesting to the contrary; indeed, he has presented us with nothing more than bald speculation that the judge, related court personnel, and jury members were biased such that an impartial trial was impossible in his case.  We hold that the district court did not abuse its discretion when it declined to remove the trial from the U.S. District Court for the District of Puerto Rico.

## B.  Mother's Exclusion From Courtroom

Before delving into the merits of Quiles's next argument, we pause to review those facts relevant to his allegation that his

---

[8]  Of the three government witnesses who worked at the court, one was involved in the court's equipment and supply office, another worked in the in-take office at the Clerk's Office as a cashier, and the third was a U.S. Marshal.  The record shows no other relation amongst the witnesses and the judge, aside from their common place of employment.

Sixth Amendment right to a public trial was violated by virtue of his mother's alleged exclusion from the courtroom during jury selection.

Quiles's case was called for trial on May 18, 2010. On May 20, 2010, the court swore in a jury and asked whether the parties objected to its providing initial jury instructions. The government responded in the negative. Quiles had a different response, evidenced in the following dialogue between the court and Quiles's counsel:

MR. GONZALEZ:  No, Your Honor. His mother is outside. Can she walk in[?]

THE COURT:  She could have walked in here a long time ago.

MR. GONZALEZ:  She was instructed while they were selecting the jury she couldn't be here. Thank you.

THE COURT:  Please bring that to my attention because under my rules anybody from the family can be here throughout the proceeding even if I have to put a chair there in the middle of the hallway. Okay. All right?

MR. GONZALEZ:  Thank you, sir.

Quiles asserts that the district court's failure to <u>sua sponte</u> investigate his mother's exclusion from the courtroom during the jury selection process constituted a structural error requiring vacatur of his conviction and remand for a new trial. The government retorts that Quiles's perfunctorily raised Sixth Amendment argument, never raised below and with no objection noted in the record, should be deemed waived.

-18-

Here, the most detail we have in the sparse record as to this claim is the colloquy between Quiles's counsel and the court (referenced above), simply stating that Quiles's mother wished to enter the courtroom but had been instructed not to do so; the court's reply that she always had been free to so enter and that any such issues should be brought to the court's immediate attention; and defense counsel's thanking of the judge. No more, no less. We agree with the government that the brief colloquy between the court and Quiles's counsel suggests an affirmative waiver of any exclusion claim that might have been asserted. See e.g., Cortés-Rivera v. Dep't of Corrs. & Rehab. of P.R., 626 F.3d 21, 26 (1st Cir. 2010). Quiles may, of course, attempt to pursue such claims as may be available to him under 28 U.S.C. § 2255. See, e.g., Bucci v. United States, 662 F.3d 18 (1st Cir. 2011).

## III.  Conclusion

For the reasons stated, we affirm the decision of the district court.

**Affirmed.**